UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARMONI TOWERS ASSETCO,
LLC, a Delaware limited liability
company,

        Plaintiff,

v.

SOLON TOWNSHIP, a Michigan
municipal body,

        Defendant.

Case No.
Hon.

_____

# COMPLAINT

Plaintiff HARMONI TOWERS ASSETCO, LLC ("HT" or "Plaintiff"), by and through its attorneys, *Williams, Williams, Rattner & Plunkett, P.C.*, states for its Complaint against Defendant Solon Township (the "Township") as follows:

## SUMMARY

This federal action arises from the Township's unlawful and arbitrary final denial on June 3, 2025 of HT's special use permit application (the "Application," see Exhibit A) for the construction and operation of a critically needed wireless communications tower and related equipment on real property located in the Township. The denial violates the Telecommunications Act of 1996 and the United States Constitution.

1

The proposed wireless communication tower includes a 195-foot monopole tower with a 4-foot Lightning Rod, resulting in a maximum overall height of 199 feet. The tower is designed to provide robust Personal Communications Services ("PCS") and related services for Verizon Wireless and other future collocated PCS providers, specifically addressing and curing a documented, significant PCS coverage gap in wireless coverage in the area between Lake Leelanau and Solon, Michigan. This wireless communications tower will also provide and enhance critical emergency services communications for the benefit of paramedics, firefighters, law enforcement agencies and the public in the Township and the surrounding area.

HT submitted its Application on April 22, 2025, for an unmanned wireless communications tower (the "Tower Site") in a Residential Agricultural 2 zone within Solon Township, located at 5799 E Gallivan Rd, Cedar, MI 49621 ("Property," see Exhibit B), where HT has a leasehold interest. HT rigorously selected the Tower Site based on thorough computerized engineering studies, which identified the Tower Site as the necessary location to fill a large gap of poor PCS and related wireless coverage between existing carrier tower site locations (no other available tower site location exists in the two-mile surrounding area) and to improve associated coverage by approximately two to three miles in radius.

Prior to selecting this Tower Site, HT diligently investigated collocation opportunities on existing wireless communications towers both within and outside the immediate wireless communication search area. No suitable tower structures were available for collocation that could meet the demanding radio frequency ("RF") coverage needs, thereby necessitating the construction of a new tower at the Tower Site. The proposed Tower Site is designed to accommodate collocation of at least two additional wireless communications antennas for future collocation providers.

The Township unlawfully denied HT's Application in a final Planning Commission decision on June 3, 2025. The Township rendered this denial without any substantial evidence in a written record, following significant public opposition at a prior Planning Commission meeting on May 6, 2025. The collective opposition to the Application consisted only of generalized aesthetic concerns and fears related to so-called "Not In My Backyard" objections regarding rural character, increased area density, and traffic and light pollution, which do not constitute legally defensible grounds for denial under federal law.

The Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 151 et seq., establishes a national policy promoting efficient and adequate nationwide wire and radio communication service for national defense and public safety. To achieve these goals, the Act limits local government authority over wireless facilities.

Specifically, the Act prohibits municipal ordinances or their application from having "the effect of prohibiting the provision of personal wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)) and mandates that any denial decision must be "supported by substantial evidence contained in a written record" (47 U.S.C. § 332(c)(7)(B)(iii)). The Act further prohibits municipal denials based on environmental effects of RF emissions if the facility complies with FCC guidelines (47 U.S.C. § 332(c)(7)(B)(iv)).

The Township's June 3, 2025 final denial of the Application in this case violates the Act by effectively prohibiting the provision of wireless services in an area suffering from a significant coverage gap and by lacking the requisite supporting substantial evidence in a written record. By denying HT's Application where a gap in wireless communications coverage exists and less intrusive alternative sites are not available, the Township violated the Telecommunications Act and HT's associated rights under the United States Constitution.

This dispute must be resolved in an expedited manner pursuant to 47 U.S.C. §332(c)(7)(B)(v).

## PARTIES, JURISDICTION, VENUE AND BACKGROUND

1. HT is a Delaware limited liability company.

2. The Township is a municipal body existing under the laws of the State of Michigan.

4

3. HT has a legal leasehold interest in the Property, located at 5799 E Gallivan Rd, Cedar, MI 49621, for the purpose of the Application and for the construction and operation of a wireless communications tower facility on the Property at the Tower Site. The landlord property owners, Robert and Stacey Foster, authorized the Application.

4. This Court has original subject matter jurisdiction over the federal questions asserted herein pursuant to 28 U.S.C. §1331.

5. This Court's federal question jurisdiction arises under the Telecommunications Act of 1996 (the "Act"), specifically 47 U.S.C. §332, and the Constitutional laws of the United States.

6. The actions or occurrences alleged in this Complaint occurred in Leelanau County, Michigan. The Township is a Michigan municipal body located within this District; therefore, personal jurisdiction exists in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because: (i) the acts giving rise to the claims alleged herein occurred in this District; (ii) the claims involve property located within this District; and (iii) the Township is located in this District.

8. HT is entitled to have this dispute heard and decided on an expedited basis pursuant to 47 U.S.C. §332(c)(7)(B)(v).

9. HT is a full-service nationwide tower development and collocation service provider for the United States wireless industry. HT builds wireless communications facilities and towers to suit wireless communication service providers' needs and HT manages a portfolio of existing towers and facilities.

10. Section 151 of the Act establishes a national policy to make available, so far as possible, to all people of the United States, . . . an efficient, nation-wide and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . 47 U.S.C. §151.

11. To meet the national policy goals enumerated under 47 U.S.C. §151, telecommunication providers must create and maintain a network of wireless communications facilities or towers to broadcast RF signals.

12. The broadcasting range of wireless communications towers is no more than a few miles and can be less depending on various factors, such as equipment type, tower height, and topography.

13. As of December 2018, wireless cellular communication is the primary means of telephone communication in the United States as more people own only a cell phone than those who have conventional telephone landlines.

14. In order to provide reliable service to their consumers, the coverage provided by wireless carriers must connect in a grid pattern resembling a honeycomb (i.e., "cellular" coverage"). Gaps in this grid cause gaps in cellular coverage, which depending on the severity can result in problems for consumers, businesses and public sector users ranging from dropped cellular calls to an inability to make/receive a call or text message or access the internet.

15. A denial of HT's opportunity to construct a needed tower or to collocate wireless carriers on a suitable tower within a geographic area suffering a coverage gap would prevent HT and wireless carriers from providing adequate, federally required PCS to consumers, businesses, emergency and public sector users within that area.

16. HT and wireless carriers engage RF engineers who use complex computer programs and extensive field testing to generate propagation maps that indicate where additional towers are needed to support the ever-increasing traffic on the network. RF engineers create these RF propagation maps using information from several different sources: publicly available data; the wireless carriers' own proprietary company data; data regarding the equipment and transition capacities of existing towers; topographical factors relevant to specific areas; intervening structures relevant to specific areas; tower-specific drive data; coverage boundaries

of neighboring facilities; and other limiting factors that may be applicable to a specific location or region.

17. Wireless communications service providers engaged HT to find a suitable site for a tower to address a significant gap in consumer cellular communication coverage in the area between Lake Leelanau and the Township and to enhance emergency services communication for users like paramedics, firefighters, and law enforcement.

18. HT identified the Property located at 5799 E Gallivan Rd, Cedar, MI 49621, owned by Robert and Stacey Foster, as the optimal Tower Site after conducting extensive computerized RF engineering studies, which confirmed the necessity and optimal location of the proposed tower to fill this coverage gap.

19. As part of its due diligence, HT extensively canvassed the surrounding area and investigated existing towers for collocation opportunities both within and outside the immediate search area. However, HT found no existing structures available or capable of meeting the carrier's RF coverage needs, making a new tower build site essential.

20. On or about April 22, 2025, HT submitted the Application to Solon Township for the construction of a new wireless communications tower at the identified Property on the Tower Site. The self-support tower will be galvanized gray and designed to accommodate Verizon Wireless equipment and two

additional collocation antenna equipment for future wireless communication providers.

21. There is an urgent need for the proposed tower within the Township at the Tower Site on the Property to close the identified significant gap in wireless communication coverage and meet the cellular and emergency communication needs of the area's residents, businesses, and public sector users.

22. On May 6, 2025, the Solon Township Planning Commission held a regular meeting. During the public comment portion of this meeting, numerous citizens expressed opposition to the Application, citing generalized concerns such as maintaining the rural character of the Township, avoiding high-density subdivisions, preserving farmland, and concerns about traffic, light pollution, and impacts on night skies. Critically, these concerns were solely generalized and lacked the specific, substantial evidence required by federal law to support a denial.

23. On June 3, 2025, the Solon Township Planning Commission denied HT's Application in a final decsion. The Township based its verbal only denial only on generalized aesthetic concerns and public opposition, and it did not support the denial with substantial evidence contained in a written record. The denial also has the effect of actually or effectively prohibiting the provision of PCS within the established gap area identified by the Application.

24. HT's Application complied with all applicable Township Ordinance requirements. HT also presented undisputed evidence, including RF propagation maps, demonstrating the existence of the significant PCS coverage gap, the necessity of the proposed Tower Site to remedy the gap, and the unavailability of less intrusive alternatives that would adequately address the demonstrated PCS coverage gap.

25. The RF propagation maps included in HT's Application graphically depicted subject areas around the Property with 'poor' or 'very poor' coverage, demonstrating the extent and urgency of the gap.

26. By denying the Application where a gap in coverage exists and less intrusive alternatives are not available, for generalized subjective reasons, rather than substantial evidence, the Township violated the Act.

27. HT's Application includes a narrative explanation as to the existence of the gap and how the Tower Site would remedy it and included RF propagation maps from registered RF Engineers from wireless carriers as support.

28. No person or party presented any evidence to contest the existence of the gap, the need for a tower to remedy the gap, or the unavailability of less intrusive alternatives that would completely address the gap.

29. Under *T Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794 (6th Cir. 2012), aesthetic concerns about a proposed tower cannot, on their own, constitute substantial evidence sufficient to bar construction of a tower.

30. The United States Court of Appeals for the Sixth Circuit held in *T Mobile Cent., LLC*, *supra*, that RF Propagation maps are appropriate and sufficient evidence to demonstrate the existence of a significant gap in a carrier's service coverage.

31. Section 332(c)(7)(B)(iv) of the Act prohibits a municipality from supporting a denial "on the basis of environmental effects of radio frequency emissions" if the tower complies with FCC emissions guidelines. The Tower Site complies with FCC emission guidelines.

32. Despite HT's Application meeting all requirements of the Act and the Township Ordinance, the Township did not approve the Application.

33. Further, the Township failed to provide written, lawful reasons for denying the Application and did not support its decision with substantial evidence in a written record.

34. The Township failed to make a good faith, reasonable inquiry into alternative locations and did not find that HT failed to do so. Furthermore, the Township did not find that HT failed to establish the existence of the gap.

35. The Township did not submit substantial evidence in opposition to the Application or the existence of the gap, and the comments presented by members of the public concerned only impermissible criteria.

36. The comprehensive materials and other substantial evidence submitted by HT to the Township demonstrate that HT has met all the requirements under the Act and the Township Ordinance for approval of the Application, and that the Township violated the Act by denying the Application.

## COUNT I
## VIOLATION OF THE TELECOMMUNICATIONS ACT OF 1996: FAILURE TO SUPPORT DENIAL WITH SUBSTANTIAL EVIDENCE IN A WRITTEN RECORD

37. HT hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

38. The Act comprehensively addresses this nation's telecommunications policy and the development of towers to provide telecommunications services throughout the United States.

39. The stated purpose of the Act is to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the deployment of new telecommunications technologies." (Preamble to the Act).

40. The Act provides, in pertinent part:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. 47 U.S.C. §332(c)(7)(B)(v).

41. The Act further provides, in pertinent part:

> Any decision by a State or local government or instrumentality thereof to ***deny*** a request to ***place, construct or modify*** personal wireless service facilities ***shall be in writing and supported by substantial evidence contained in a written record***. 47 U.S.C. §332(c)(7)(B)(iii) (emphasis added).

42. The denial of HT's Application, through the actions of the Township, lacked permissible or substantial evidence presented to or by the Township or provided in a written record.

43. There is no lawful written record containing substantial evidence supporting the denial.

44. Therefore, the denial of HT's Application violates the Act.

## COUNT II
## VIOLATION OF THE TELECOMMUNICATIONS ACT OF 1996: ACTUAL OR EFFECTIVE PROHIBITION OF PERSONAL WIRELESS SERVICES

45. HT hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

46. The Act provides, in pertinent part, that a state or local government or instrumentality "shall ***not prohibit or have the effect of prohibiting*** the provision of personal wireless services." 47 U.S.C. §332 (c)(7)(B)(i)(II) (emphasis added).

47. The denial of HT's Application prevents the closing of the gap in the area around the Property.

48. HT demonstrated that a PCS gap exists around the Property and that the proposed tower would remedy the gap at the Tower Site.

49. HT also submitted substantial evidence to the Township showing that HT investigated alternative sites around the Property, but none of the available alternative locations could remedy the gap and comply with the Township Ordinance's requirements.

50. Substantial evidence to rebut HT's evidence was not submitted to the Township or made a part of a written record, nor was permissible and substantial evidence cited by the Township in its decision denying HT's Application.

51. Accordingly, the Township's denial of HT's Application violates 47 U.S.C. §332(c)(7)(B)(i)(II) as it constitutes an actual or effective prohibition of the provision of wireless communication services to various consumer and public sector groups within the area covered by the established PCS gap.

## COUNT III
## DENIAL OF SUBSTANTIVE DUE PROCESS UNDER THE FEDERAL CONSTITUTION

52. HT hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

53. A substantial segment and percentage of the population of the Township, the State of Michigan, and the United States has a recognized and demonstrated need for the facilities and services provided by HT and wireless carriers as such facilities and services contribute to the right of an individual to engage in the common occupations of life, a liberty interest protected under the United States Constitution.

54. The Property and the Tower Site is a reasonable, minimally intrusive, and lawful location for the proposed tower that would serve to remedy the gap.

55. HT had a legitimate expectation, lawful entitlement and protected property interest that the Township would approve HT's Application under the Act once HT established: (a) its Application met all requirements of the Act, (b) a significant gap in service coverage exists around the Property, and (c) a good faith, but unsuccessful, inquiry into less-intrusive alternative locations that HT had completed.

56. The Township's denial of HT's Application advances no reasonable or rational governmental interest and the denial is both arbitrary and capricious.

57. The Township's denial of HT's Application constitutes a violation of HT's right to substantive due process as set forth in the Fifth and Fourteenth Amendments to the United States Constitution.

58. The Township's denial of the Application restricts HT's lawful use of the Property in violation of the United States Constitution.

59. The Township's denial of the Application deprived HT of its constitutionally protected property and liberty interests in violation of the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States.

**PRAYER FOR RELIEF**
**WITH RESPECT TO COUNTS I THROUGH III**

WHEREFORE, Plaintiff Harmoni Towers AssetCo, LLC prays that this Honorable Court decide this matter on an expedited basis pursuant to 47 U.S.C. §332(c)(7)(B)(v) and enter final judgment in its favor and against the Township providing for the following relief:

A. Compel the Township by affirmative injunction to grant approval of the Application and to approve the proposed wireless carriers for collocation on the proposed tower on the Property at the Tower Site;

B. Compel the Township by affirmative injunction to issue all permits and approvals necessary for HT to construct and operate the proposed

       tower on the Property at the Tower Site as proposed by HT in the Application;

C.    Enter an injunction preventing the Township from interfering with HT's use of the Property for the proposed tower on the Property at the Tower Site as set forth in the Application;

D.    Declare that the Township's denial of the Application was not supported by substantial evidence in a written record as required by the Act;

E.    Declare that the Township violated the Act by denying the Application and causing an actual or effective prohibition of required PCS services in the area affected by the established gap;

F.    Declare that the Township violated the Federal Constitution by denying the Application;

G.    Award reasonable attorney fees, costs, and expenses allowed by law, including but not limited to those specifically provided for by 42 U.S.C. §1983 and §1988;

H.    Such other and further relief as this Court deems just and proper.

        WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

        /s/ *Richard E. Rassel*
        Richard E. Rassel (P57540)
        Jeremy M. Manson (P76920)
        *Counsel for Plaintiff*
        380 N. Old Woodward, Suite 300
        Birmingham, MI  48009
        (248) 642-0333
        rer@wwrplaw.com
        jmmanson@wwrplaw.com

Dated:  June 26, 2025